UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

STELLA EBO, M.D.,

                         Plaintiff,              **MEMORANDUM & ORDER**
                                                           12-CV-4432 (MKB) (RER)

                       v.

NEW YORK METHODIST HOSPITAL, DR.
MATVEY PIKUSOVICK, M.D., DR. STANLEY
SHERBELL, M.D., DR. VINCINCENT T.
PILLARI, M.D., DR. SANFORD M. LEDERMAN,
M.D., DR. HAZEM QUALLA, M.D., and MARK
MUNDY,

                        Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Stella Ebo brings the above-captioned action against Defendants New York Methodist Hospital, Dr. Matvey Pikusovick, Dr. Stanley Sherbell, Dr. Vincent T. Pillari,[1] Dr. Sanford M. Lederman, Dr. Hazem Qualla and Mark Mundy, alleging employment discrimination on the basis of race and national origin, hostile work environment, retaliation and "discriminatory practices." (Second Am. Compl. ("SAC"), Docket Entry No. 23.) Currently before the Court is Plaintiff's appeal of Magistrate Judge Ramon E. Reyes' December 30, 2014 Order granting Defendants' motion to compel Plaintiff to complete an expert psychological evaluation. For the reasons set forth below, the Court affirms Judge Reyes' Order.

---

[1] The Complaint appears to list Defendant Pillari's first name incorrectly as "Vincincent." Based on the filed Notice of Appearance, "Vincent" appears to be the correct spelling. (Docket Entry No. 6.)

I. **Background**

   a. **Allegations in the Second Amended Complaint[2]**

Plaintiff alleges that she was subjected to discrimination, a hostile work environment and retaliation while employed as a physician at New York Methodist Hospital (the "Hospital"). (SAC ¶¶ 1–56.) According to Plaintiff, Defendants took various adverse actions against her, including, among other things, terminating her operating room privileges, denying her request for admittance into the Hospital's residency program, giving her negative feedback, repeatedly sending her home early, and, ultimately, firing her. (*Id.* ¶¶ 1, 6, 8, 25, 26, 29.)

   b. **Defendants' motion to compel and Plaintiff's appeal**

On December 17, 2014, Defendants moved to compel Plaintiff to continue and complete an expert psychological evaluation. (Mot. to Compel, Docket Entry No. 45.) According to Defendants, Plaintiff met with Dr. Mark Siegert, Defendants' expert forensic psychologist, for her psychological evaluation on December 9, 2014. (*Id.* at 1.) Defendants state that Dr. Siegert was unable to complete Plaintiff's evaluation because Plaintiff (1) "delayed the written portion of the examination while Dr. Siegert attempted to collect her history and explain the overall procedure for the day"; (2) fell asleep during the evaluation and took "numerous breaks during her written psychometric examination and psychological assessment"; and (3) "continuously interrupted" Dr. Seigert's oral questioning. (*Id.*) Because of these delays, Dr. Seigert told Plaintiff that he would need to see her again to complete the examination and "[P]laintiff acquiesced," agreeing to resume the examination on December 17, 2014. (*Id.* at 2.) However,

---

[2] The facts alleged in the Second Amended Complaint are assumed true for purposes of this appeal.

Plaintiff's counsel subsequently refused to produce Plaintiff to continue the examination.[3] (*Id.*) Defendants requested that Judge Reyes compel Plaintiff to continue her psychological examination, arguing that it was needed "[g]iven the severity of the emotional distress alleged by [P]laintiff, and given the amount of damages sought by [her] for that distress." (*Id.*)

Plaintiff did not oppose Defendants' motion to compel. Thereafter, on December 30, 2014, Judge Reyes granted Defendants' motion to compel "as unopposed," ordering Plaintiff to complete the psychological examination (the "December 30, 2014 Order"). (Order dated Dec. 30, 2014.) Six days later, on January 5, 2015, Plaintiff submitted a *pro se* letter to this Court, regarding the December 30, 2014 Order. (Pl. Jan. 5, 2015 Letter ("Pl. Ltr."), Docket Entry No. 47.) The Court ordered Plaintiff's lawyers to respond to Plaintiff's *pro se* letter, and, on January 15, 2015, counsel clarified that Plaintiff was requesting an appeal of the December 30, 2014 Order. (Pl. Jan. 15, 2014 Letter, Docket Entry No. 49.)

### c. The parties' submissions on appeal

In response to Plaintiff's *pro se* letter and appeal, Defendants filed a letter under seal. (Def. Jan. 12, 2015 Letter, Docket Entry No. 48.) The sealed letter attaches Defendants' original motion to compel and a sworn affidavit from Defendants' psychologist, Dr. Mark Siegert. (Aff. of Dr. Mark Siegert ("Siegert Aff.") annexed to Def. Mot. to Compel as Ex. A.) The parties' submissions discuss the initial examination, and are detailed below.

#### i. Siegert affidavit

On December 9, 2014, Plaintiff met with Dr. Siegert, to complete a psychological evaluation. (Siegert Aff. ¶ 2.) The examination was scheduled for a full day and was expected

---

[3] Defendants state that Plaintiff's counsel demanded that Defendants agree to additional fact depositions in exchange for Plaintiff's consent to undergo continued psychological examination. (Mot. to Compel 2.)

to include two written examinations and an oral examination.  (*Id.*)  The examination was to focus on Plaintiff's "alleged emotional distress damages and her mental condition."  (*Id.*)

According to Dr. Seigert, the examination began on time, at 10:20 AM, however, Plaintiff soon began interjecting and preventing him from asking preliminary questions.  (*Id.*)  Apparently, Plaintiff repeatedly interjected with information about events related to the litigation, and Dr. Seigert assured Plaintiff that she would be "provided ample time to tell her version of what happened at NY Methodist leading to the present litigation."  (*Id.* ¶ 3.)  Due to these interruptions, the "pre-examination interview" — which Dr. Seigert states normally takes 30 to 40 minutes — was not completed until 12:00 PM.  (*Id.*)  Dr. Seigert offered Plaintiff a lunch break, but she declined, and he allowed her to continue with the testing.  (*Id.*)

Dr. Seigert administered a "Multiphasic Personality Inventory," which is a "true false psychometric examination" consisting of over 500 true and false questions, requiring an hour and fifteen minutes to complete.  (*Id.* ¶ 4.)  While completing the test, Plaintiff began falling asleep.  (*Id.*)  Plaintiff first declined Dr. Seigert's requests to take a break, but she eventually took a 25 minute break and then resumed testing.  (*Id.*)  Plaintiff completed the test in three hours. (*Id.*)  Prior to beginning the second exam, Plaintiff took a ten-minute break at Dr. Seigert's suggestion.  (*Id.* ¶ 5.)  Thereafter, Plaintiff completed the "Millon Clinical Mutltiaxial Inventory-3rd Edition" psychological assessment in the "standard time" of 35 minutes.  (*Id.*)

In Dr. Seigert's experience, it takes a subject 1 hour and 45 minutes to complete both examinations, but it took Plaintiff 3 hours and 45 minutes.  (*Id.* ¶ 6.)  As a result, Dr. Seigert did not begin his oral examination of Plaintiff until 4:05 PM.  (*Id.* ¶¶ 6–7.)  At that point, "it became clear that [they] would be unable to complete the examination on that day," and Dr. Seigert "explained to [Plaintiff] that [he] needed additional time to complete her examination."  (*Id.* ¶ 8.)

4

They discussed and agreed to continue the examination on December 17, 2014 at 10:00 AM. (*Id.*)

Dr. Seigert then began the oral examination with an assessment of Plaintiff's "psychosocial history." (*Id.* ¶ 7.) However, the examination's progress "was slowed by [Plaintiff] asking numerous questions, objecting to [Dr. Seigert's] asking simple and common questions regarding her family life, and due to her strong responses to typically easy non-emotional questions regarding her psychosocial history." (*Id.*) While Dr. Seigert does not detail the questions or topics discussed, he states that "[i]n [his] experience, few people object to these questions, as they are routine and mostly factual." (*Id.*) According to Dr. Seigert, Plaintiff "frequently objected to answering simple questions, and was frequently suspicious and distraught, which caused the psychosocial history to take far longer than anticipated." (*Id.*) As a result, Dr. Seigert continued the oral examination until 5:00 PM, but could not complete it. (*Id.* ¶¶ 7–9.) Dr. Seigert states that he requires "four additional hours to complete [Plaintiff's] psychological examination." (*Id.* ¶ 10.)

### ii. Plaintiff's submission

In support of the current appeal, Plaintiff submitted a four-page letter detailing her experience during the first examination. (Pl. Ltr.) Plaintiff states that on December 9, 2014, she met with Defendants' psychologist, and was "told it was to find out how emotionally distress[ing] this ordeal of being denied education and benefits . . . [was]." (*Id.* at 1.) Plaintiff states that throughout the examination's eight hours, she did not discuss the emotional distress she suffered with the psychologist. (*Id.*) Instead, she was asked whether she "was raped as a child or raped at all" or if she used drugs or alcohol "to calm the depression [she] felt from this ordeal . . . ." (*Id.*)

Plaintiff found these questions inappropriate. According to Plaintiff, the questions "on the fact of whether [she] use[s] alcohol or drugs to ease [her] emotional pain . . . was [*sic*] out of place," particularly because she had already explained that she did not use drugs or alcohol. (*Id.* at 3.) In addition, she states that she "could not understand" why the psychologist asked if she had ever been raped as a child or an adult, because the psychologist knew from "the beginning of the session" that "[she] only ha[s] one partner." (*Id.*)

Plaintiff asserts that she tried to answer the psychologist's questions regarding her "deepest emotions," without crying, but these questions "hardly came up." (*Id.* at 1.) As a result, Plaintiff attempted to "let [the psychologist] know how I have suffered and even tried to talk more about the emotional effect [of] some of the things [about which the psychologist] asked . . . ." (*Id.*) Despite attempting to answer his questions, Plaintiff states that the psychologist would interrupt her, and "let[] [Plaintiff] know he was not ready for [her] to go there or talk about that." (*Id.*)

Plaintiff was "shocked" that Dr. Seigert responded in this manner and that he did not want to allow her to "talk about [her] emotions" or "listen to that part of [her] story," which, according to Plaintiff, was ostensibly the main purpose of conducting the examination. (*Id.* at 2.) In her letter, Plaintiff repeats throughout that the psychologist "never once" let her speak about "the emotional ordeal" or "emotional [e]ffect that all [the] problems caused by Methodist had on her." (*Id.*) Rather, the psychologist "always interrupted [her] and asked [her] to stop," explaining that they would "get to that soon or in a minute[,] but never did." (*Id.*) According to Plaintiff, "it seemed as if the opposition was using the psychologist to obtain information from [her] . . . that had nothing to do with [her] emotional state . . . without [her] lawyers [*sic*] guidance." (*Id.*)

6

Plaintiff took three, five-minute bathroom breaks, and was "forced by the psychologist to leave for about 15 minutes" after she explained that she did not want to take a lunch break. (*Id.*) Plaintiff recalled "fill[ing] out almost 400 questions in an hour." (*Id.*) During that time, Plaintiff states that the psychologist left the room "when the opposition lawyer summoned him to do so." (*Id.*) In total, Plaintiff states she was there for 8 hours, and that the examination was "emotionally draining" and "disturbing." (*Id.*)

After the exam, Plaintiff met with "[her] own psychologist, Dr. Kirkland Vaughnas," who apparently found the length of the session "strange." (*Id.* at 2–3.) Dr. Vaughnas advised "that [Plaintiff] not return to [Dr. Seigert] due to the mental stress [she] received." (*Id.*) Plaintiff asks that she not to be ordered to resume "this emotionally draining interview by the [D]efendants' psychologist as it would cause [her] more stress and emotionally drain [her]."[4] (*Id.* at 3–4.)

## II. Discussion

### a. Standard of review

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil Procedure, "[a] magistrate judge is authorized 'to make findings as to non-dispositive pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were clearly erroneous or contrary to law.'" *Storms v. United States*, No. 13-CV-0811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (internal quotation marks omitted) (quoting *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2

---

[4] At the end of her submission, Plaintiff describes discovery disputes with Defendants. She states that Defendants have refused to permit depositions of "certain people that my lawyers had called for," and have "refused to hand over certain papers and documents" that were "promised last year." (*Id.* at 3.) None of these issues are properly before the Court. Judge Reyes has presided over all discovery matters in this proceeding. Plaintiff should raise any discovery issues with Judge Reyes.

7

(E.D.N.Y. Apr. 2, 2014) (citing 28 U.S.C. § 636(b)(1)); *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012); *Storms*, 2014 WL 1338720, at *2. "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Raimey v. Wright Nat'l Flood Ins. Co.*, --- F. Supp. 3d ----, 2014 WL 7399179, at *12 (E.D.N.Y. Dec. 31, 2014) (internal quotation marks omitted); *Storms*, 2014 WL 3547016, at *4 (same). Under this highly deferential standard, magistrate judges are "afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *McNamee*, 2014 WL 1338720, at *2 (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 524 (2d Cir. 1990) and *United States v. Dist. Council*, 782 F. Supp. 920, 922 (S.D.N.Y. 1992)). Therefore, "a party seeking to overturn a discovery order [by a magistrate judge] bears a heavy burden." *Bachayeva v. Americare Certified Special Servs.*, No. 12-CV-1466, 2013 WL 4495672, at *1 (E.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)).

      **b. Plaintiff's objections**

Where a party serves and files objections to a magistrate judge's decision on "a pretrial matter not dispositive of a party's claim or defense" within fourteen days of that decision, "[t]he district judge in the case must consider [those] timely objections" to the magistrate judge's decision "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). However, although a party may object, it is "[a] fundamental principle of law . . . that arguments not raised below are forfeited on appeal." *Smith v. Unger*, No. 13-CV-5485, 2014 WL 7008949, at *3 (S.D.N.Y. Dec. 12, 2014) (citing *Local 377,*

8

*RWDSU, UFCW v. 1864 Tenants Ass'n*, 533 F.3d 98, 99 (2d Cir. 2008)); *see Local 377*, 533 F.3d at 99 ("[Defendant] raises additional arguments on appeal that were not raised below; those arguments have been forfeited."). This fundamental principle applies to a district court's review of a magistrate's order. *See Anderson v. Phoenix Beverage Inc.*, No. 12-CV-1055, 2015 WL 737102, at *3 (E.D.N.Y. Feb. 20, 2015) ("Courts generally do not entertain new legal arguments not presented to the magistrate judge."); (*Arnold v. Sotz*, No. 00-CV-4485, 2006 WL 2792749, at *2 (E.D.N.Y. Sept. 27, 2006) ("Since this argument was not before Magistrate Judge Lindsay, the Court need not consider it."); *Bell v. Pfizer*, No. 03-CV-9945, 2006 WL 2529762, at *1 (S.D.N.Y. Aug. 31, 2006) ("[A]n objecting party may not raise new arguments that were not made before the Magistrate Judge." (internal citations omitted)); *see also Wells Fargo Bank N.A. v. Sinnott*, No. 2:07-CV-169, 2010 WL 297830, at *2–*5 (D. Vt. Jan. 19, 2010) (refusing to consider party's new argument on appeal of magistrate judge's report and recommendation after applying a six factor test to determine if the district court should consider a party's new argument that was not first presented to the magistrate judge). Of course, "[t]he rule is not an absolute bar to raising new issues on appeal; the Court may, in its discretion, disregard the general rule when necessary to remedy manifest or obvious injustice." *Homeless Patrol v. Joseph Volpe Family*, 425 F. App'x 60, 61 (2d Cir. 2011).

Here, Plaintiff did not oppose the motion to compel before Judge Reyes, and now opposes the motion for the first time on appeal. Defendants "justifiably oppose[] [Plaintiff's] attempt to raise a new argument on appeal that was not before the magistrate judge." *Anderson*, 2015 WL 737102, at *3. Indeed, Plaintiff's request should be denied on that ground alone. *Id.* ("Courts generally do not entertain new legal arguments not presented to the magistrate judge."). But even if Plaintiff had not waived those arguments, as discussed below, they lack merit, and

9

fall far short of demonstrating that Judge Reyes' Order granting Defendants' motion to compel is clearly erroneous or contrary to law.

### c. Continuation of the examination

Federal Rule of Civil Procedure 35(a) permits a court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a). Such an order may only be made on "good cause shown." *In re MTBE Prods. Liab. Litig.*, 528 F. Supp. 2d 303, 319 (S.D.N.Y. 2007 (quoting Fed. R. Civ. P. 35(a)); *see Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964). "[T]he required showing of 'good cause' for the examination and that the condition of the party be 'in controversy' are not mere formalities." *Winters v. Travia*, 495 F.2d 839, 840–41 (2d Cir. 1974) (citing *Schlagenhauf*, 379 U.S. at 118) (issuing a writ of *mandamus* preventing the Rule 35(a) examination where plaintiff did not allege "present or anticipated physical or mental disability" that would put her condition "in controversy").

Unlike the general standard for obtaining discoverable materials, good cause is not established by merely showing the relevancy of the desired information, as "there must be greater showing of need under Rule[] . . . 35 than under the other discovery rules." *Schlagenhauf*, 379 U.S. at 118; *Vilkhu v. City of New York*, No. 06-CV-2095, 2007 WL 2713340, at *4 (E.D.N.Y. Sept. 13, 2007). "Rule 35 therefore '[requires] an affirmative showing by the movant that each condition as to which examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.'" *Vilkhu*, 2007 WL 2713340, at *4 (alteration in original) (quoting *Schlagenhauf*, 379 U.S. at 118).

"Whether the requisite showing has been made in a particular case is within the 'sound discretion' of the court." *Vilkhu*, 2007 WL 2713340, at *4 (quoting *Cauley v. Ingram Micro,*

*Inc.*, 216 F.R.D. 241, 243 (W.D.N.Y. 2003)). In determining whether a party has put his or her mental state "in issue," there is a distinction between "garden variety" mental distress claims — which do not warrant a Rule 35 examination — and more severe mental distress claims — which do warrant a Rule 35 examination. *Guzman v. News Corp.*, No. 09-CV-9323, 2012 WL 2148166, at *1–2 (S.D.N.Y. June 13, 2012) (ordering Rule 35 examination and rejecting argument that emotional distress was "garden variety" where plaintiff claimed that plaintiff suffered ongoing severe mental anguish and emotional distress as the basis for each cause of action); *Jarrar v. Harris*, No. 07-CV-3299, 2008 WL 2946000, at *4–5 (E.D.N.Y. July 25, 2008) (citing cases and recognizing the distinction between "garden variety" mental distress claims and more severe claims for purposes of Rule 35); *Figueroa v. United States*, No. 00-CV-2773, 2008 WL 2626753, at *1 (E.D.N.Y. June 30, 2008) ("Courts do not automatically order mental examinations in cases involving 'garden-variety' claims of mental anguish . . . .").

Although a court may order multiple examinations under Rule 35, "a higher showing of cause is required to justify subsequent examinations." *Furlong v. Circle Line Statue of Liberty Ferry, Inc.*, 902 F. Supp. 65, 70 (S.D.N.Y. 1995) (citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2234, at 475 (2d ed. 1994)). A court has discretion to sustain the reopening, or continuation of a party's examination where it is warranted. *Dilworth v. Goldberg*, No. 10-CV-2224, 2014 WL 3798631, at *13 (S.D.N.Y. Aug. 1, 2014) (rejecting party's objection to magistrate's order permitting an additional two hour Rule 35(a) psychological examination as "well within [the magistrate's] discretion" after the first examination revealed a complicated history with many traumatic events warranting additional time to examine); *Carovksi v. Jordan*, No. 06-CV-716, 2008 WL 1805813, at *5 (W.D.N.Y. Apr. 18, 2008) (granting motion for examination and permitting the exam to "continue up to three

days until completed, as noticed by defendants").

Here, Plaintiff does not argue that her continued examination is unwarranted under Rule 35 for lack of a "controversy" or lack of sufficient justification; rather, she argues that resuming the examination would "cause [her] more stress and emotional[] drain [her]." (Pl. Ltr. 3–4.) Plaintiff points to the fact that she was already examined "for about 8 [hours]," which she found "mentally draining and disturbing." (*Id.* at 2.) Plaintiff also disagrees with the form and process of the examination. (*Id.* at 1–4 ("There was no intention or effort made by the psychologist to talk about the emotional distress.").) But Plaintiff makes no argument that continuing the examination, even after eight hours of prior examination, is not justified, and argues only that it is unwanted.

Although Judge Reyes was unable to consider the arguments Plaintiff makes for the first time here, he considered Defendants' arguments and the sworn statements of Defendants' forensic psychologist. Based on the Court's review of those arguments and statements, Judge Reyes' order was not clearly erroneous, as there was ample basis to find that continuation of the examination was necessary given Plaintiff's behavior during the initial examination. Through Defendants' submissions, Judge Reyes was presented with Plaintiff's repeated interjections during the examination, her frequent breaks and delays due to her falling asleep, and the fact that it took her nearly four hours to complete various written examinations. (Siegert Aff. ¶¶ 2–4, 6.) In addition, as Defendants' psychologist states — and as Plaintiff states on appeal — because of the disjointed nature of the examination, Plaintiff never had an opportunity "to discuss her version of the events and her beliefs as they relate to her emotional distress damages." (Siegert Aff. ¶ 9; Def. Letter 1–4.) In light of both the applicable law and facts, the Court finds that Judge Reyes' order was not clearly erroneous or contrary to law. *See Murphy*, 703 F.3d at 188;

*Storms*, 2014 WL 3547016 at *2

### d. Length of the continued examination

Rule 35 requires that an order compelling an examination "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35. Defendants' forensic psychologist states that he requires four additional hours to complete Plaintiff's psychological examination. (Siegert Aff. ¶ 10.) Having found that Judge Reyes' prior order was not clearly erroneous, the Court refers the case to Judge Reyes to determine the appropriate length and scope of Plaintiff's continued examination. *See Bakhit v. Safety Marking, Inc.*, No. 3:13-CV-1049, 2014 WL 6675024, at *2 (D. Conn. Nov. 25, 2014) (setting the length and scope of the Rule 35(a) examination); *Hayles v. Advanced Travel Mgmt. Corp.*, No. 01-CV-10017, 2002 WL 550973, at *3 (S.D.N.Y. Apr. 13, 2002) (same); *Hirschheimer v. Associated Metals & Minerals Corp.*, No. 94-CV-6155, 1995 WL 736901, at *5 (S.D.N.Y. Dec. 12, 1995) (evaluating the reasonableness of the proposed duration of examination).

### III. Conclusion

For the foregoing reasons, the Court affirms Judge Reyes' December 30, 2014 Order, and refers the matter to Judge Reyes to determine the appropriate length and scope of Plaintiff's continued examination.

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: July 6, 2015
Brooklyn, New York